Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| NATALIA FELIPEZ ALEMAÑY<br><br>Apelada<br><br>v.<br><br>DIEGO R. ORTIZ ROSARIO; su esposa ZINNIA AYALA GONZÁLEZ; DO SOLUTIONS, LLC d/b/a "DOS Capital"; compañía aseguradora "A" y "B"; FULANO DE TAL y ; COMPAÑÍA "x"<br><br>Apelante<br><br>v.<br><br>CHRISTIAN FELIPEZ ALEMAÑY<br><br>Tercero Demandado-Apelado | TA2026AP00433 | APELACIÓN Procedente del Tribunal de Primera Instancia, Sala<br><br>Caso Núm.: BY025CV01866 (501)<br><br>Sobre: Incumplimiento de Contrato; Cobro de Dinero Vía Ordinaria; Daños y Perjuicios; Fraude y Dolo Contractual |

Panel integrado por su presidenta, la jueza Lebrón Nieves, el juez Pagán Ocasio y la jueza Álvarez Esnard

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de junio de 2026.

Comparece ante nos Diego Ortiz Rosario ("señor Ortiz Rosario"), la señora Zinnia Ayala González y DO Solutions LLC (en conjunto, "Parte Apelante") mediante un recurso de *Apelación* presentado el 28 de abril de 2026. Nos solicitan la revisión de la *Sentencia Sumaria Parcial* emitida y notificada el 31 de marzo de 2026. Por virtud de esta, el foro primario declaró *Ha Lugar* la petición de sentencia sumaria parcial presentada por el señor Christian D. Felipez Alimañy ("Parte Apelada"). En consecuencia,

desestimó la *Demanda contra Tercero* que había entablado contra la Parte Apelada, e impuso un pago de tres mil dólares ($3,000.00), en concepto de honorarios de abogado por temeridad.

Por los fundamentos que expondremos a continuación, **confirmamos** la *Sentencia Sumaria Parcial* apelada.

## I.

El caso de autos tuvo su génesis el 10 de abril de 2025, cuando Natalia Felipez presentó *Demanda* sobre incumplimiento contractual y daños y perjuicios. En esta, alegó que el señor Ortiz Rosario la defraudó por un total ascendente a cincuenta mil dólares ($50,000.00), mediante supuestas falsas representaciones, a los fines de que el dinero entregado a éste sería utilizado en inversiones de criptomonedas.

Transcurridos varios trámites procesales, el 8 de septiembre de 2025, la Parte Apelante radicó *Demanda contra tercero y Moción Solicitando Intervención Obligada* contra el señor Christian Felipez. A través de su escrito, la Parte Apelante alegó que, en virtud de un pleito previamente presentado por el señor Christian Felipez, estos habían llegado a un acuerdo transaccional. Así mismo, particularizó que, dentro del pago global emitido a favor de Christian Felipez, estaba incluida la cuantía adeudada a la señora Natalia Felipez. En virtud de lo anterior, la Parte Apelante adujo que le correspondía a Christian Felipez hacer entrega de la cantidad que supuestamente le correspondía a Natalia Felipez del pago realizado como consecuencia del acuerdo transaccional. El 9 de septiembre de 2025, el foro *a quo* emitió *Orden,* donde autorizó la demanda contra tercero y dictó término para que se sometiera el correspondiente emplazamiento.

Tras otros trámites procesales, Christian Felipez compareció mediante *Moción Solicitando Sentencia Sumaria Parcial* el 4 de febrero de 2026. En su moción, detalló que el contrato de

transacción firmado entre este y el señor Ortiz Rosario no incluía partida alguna relacionada a la alegada deuda con Natalia Felipez. Por el contrario, aludió que respondía exclusivamente al interés de las partes de poner fin al pleito que pendía entre estos. De la referida moción se desprende que Christian Felipez había iniciado un recurso judicial contra el señor Ortiz Rosario por hechos similares a los que dieron pie a la demanda de Natalia Felipez. En apoyo a estas alegaciones, el señor Christian Felipez propuso cincuenta y cinco (55) hechos incontrovertidos, apoyados en prueba documental, debidamente citada, conforme a la Regla 36 de las Reglas de Procedimiento Civil, *infra.* En virtud de lo expuesto, el señor Christian Felipez solicitó que se desestimara la demanda interpuesta en su contra y, a su vez, que se le impusiera al señor Ortiz Rosario la obligación de pagar diez mil dólares ($10,000) en concepto de honorarios de abogado.

Luego de otros trámites procesales, la Parte Apelante sometió *Oposición a Moción Solicitando Sentencia Sumaria Parcial,* el 20 de marzo de 2026. Además, alegó que en el pago realizado a favor de Christian Felipez, había sucedido un pago de lo indebido, toda vez que, según la Parte Apelante, se le pagó en exceso. Esta arguye que dentro del pago emitido a favor del señor Christian Felipez, se incluyó inadvertidamente la cantidad adeudada a Natalia Felipez. Como parte de su moción, la Parte Apelante aceptó que no existía controversia en cuanto a los hechos propuestos en la *Moción Solicitando Sentencia Sumaria Parcial* del señor Christian Felipez. No obstante, esta adujo que había controversia sobre diversos hechos materiales adicionales que impedían la resolución sumaria de la causa de acción contra Christian Felipez. Entre otras cosas, esbozó que la moción de sentencia sumaria se presentó de forma prematura, por no haber culminado el descubrimiento de prueba.

Luego de examinar los argumentos planteados, el 31 de marzo de 2026, el foro *a quo* emitió *Sentencia Sumaria Parcial*, notificada el mismo día, donde declaró *Ha Lugar* la solicitud de sentencia sumaria parcial. En dicho dictamen, el foro primario identificó y tomo por admitidos los hechos propuestos por Christian Felipez, en virtud de lo cual, realizó las siguientes determinaciones de hechos incontrovertidos:

1. El 19 de septiembre de 2023, el Sr. Christian D. Felipez Alemañy y la Sra. Natalia Felipez Alemañy a través de su representación legal enviaron una reclamación extrajudicial al Sr. Diego Ortiz Rosario sobre incumplimiento de contrato, falsas representaciones, fraude, enriquecimiento injusto, apropiación ilegal e indebida y daños a las direcciones PO Box 366872 San Juan, Puerto Rico 00936-6872 y Estancias de la Fuente Calle Girasol #112 Toa Alta, Puerto Rico 00953.

2. Entre otros asuntos, dicha misiva especificó lo siguiente: Durante el mes de mayo de 2022, los clientes le entregaron a usted mediante cheques las cantidades de doscientos mil dólares ($200,000.00) y cuarenta mil dólares ($40,000.00) respectivamente con el propósito de llevar a cabo ciertas inversiones las cuales usted garantizó y representó que tendrían una ganancia garantizada de uno por ciento (1%) diario del total invertido.

3. El 7 de octubre de 2023, el Sr. Christian D. Felipez Alemañy presentó Demanda de incumplimiento de contrato, cobro de dinero ordinario, daños y perjuicios, fraude y dolo contractual.

4. El caso quedó formalmente presentado en el Tribunal Superior de Bayamón Caso Civil Christian D Felipez Alemañy v. Diego Ortiz y Otros BY2023CV05610 Sala 701 ante la Jueza Liza M. Báez Burgos.

5. Las partes involucradas en el Caso Civil Christian D Felipez Alemañy v. Diego Ortiz y Otros BY2023CV05610 fueron:

   A. Parte Demandante: Christian D. Felipez Alemañy, persona mayor de edad, soltero, propietario y vecino de San Juan, Puerto Rico.

   B. Parte Demandada: Diego Ortiz, mayor de edad, casado; su esposa Zinnia Ayala González y la Sociedad Legal de Gananciales compuesta por ambos; DO Solutions, LLC d/b/a "DOS Capital"; compañía aseguradora "A" y "B"; Fulano de Tal; y compañía "X".

6. La Sra. Natalia Felipez Alemañy no figura como parte demandante ni demandada en la Demanda Christian D. Felipez Alemañy v. Diego Ortiz Rosario y Otros, Caso Civil Núm. BY2023CV05610, ni compareció de forma alguna en dicho pleito.

7. La Demanda presentada en el caso civil núm. BY2023CV05610 no contiene alegación alguna ni reclamación relacionada con la suma de cuarenta mil dólares ($40,000.00) atribuida a la Sra. Natalia Felipez

Alemañy, ni solicita remedio alguno basado en dinero entregado por dicha persona.

8. En la Demanda del caso civil núm. BY2023CV05610, las alegaciones de entrega de dinero parten exclusivamente de la suma de doscientos mil dólares ($200,000.00) entregados por el Sr. Christian D. Felipez Alemañy, a partir de la cual se reclamaron otras cantidades adicionales por concepto de ganancias alegadas, daños y otros remedios, sin que exista referencia alguna a dinero entregado por la Sra. Natalia Felipez Alemañy ni a reclamaciones basadas en la suma de cuarenta mil dólares ($40,000.00).

9. Exclusiva y específicamente, en la Demanda en el caso BY2023CV05610 se solicitó: Cobro de Dinero — $200,000.00 por cantidad entregada (párr. 28); $71,933.11 por ganancias alegadas acumuladas (párr. 29); $81,115.33 por ganancias adicionales alegadas (párr. 30); $353,048.44 como cantidad total vencida, líquida y exigible (párr. 31); $30,000.00 por daños morales (párr. 32); y $10,000.00 por honorarios de abogado (párr. 33).

10. El 27 de noviembre de 2024, a las 5:51 a.m., el Lcdo. Gilberto J. Santiago Martínez envió correo electrónico desde la dirección gsantiago@lawservicespr.com al Lcdo. Luis Rafael Rivera Rodríguez, abogado del Sr. Diego Ortiz Rosario, a la dirección luiswichyrivera@hotmail.com, con copia a gjsantiago29@gmail.com.

11. El referido correo electrónico fue enviado bajo el asunto: "Oferta Transaccional: Christian D. Felipez Alemañy v. Diego Ortiz Rosario | BY2023CV05610."

12. El 27 de noviembre de 2024, a la 1:47:40 p.m., el Lcdo. Luis Rafael Rivera Rodríguez respondió al correo anterior confirmando el recibo de la oferta transaccional.

13. En su respuesta, el Lcdo. Rivera Rodríguez expresó: "Hemos recibido su Oferta Transaccional. Se la haré llegar a mi cliente y la consultaremos."

14. El correo de confirmación mantiene como asunto: "RE: Oferta Transaccional: Christian D. Felipez Alemañy v. Diego Ortiz Rosario BY2023CV05610."

15. Ninguno de los correos electrónicos antes descritos menciona a la Sra. Natalia Felipez Alemañy ni hace referencia a reclamaciones de terceros.

16. El 2 de diciembre de 2024, a las 2:57 p.m., el Lcdo. Gilberto J. Santiago Martínez envió correo electrónico desde gsantiago@lawservicespr.com al Lcdo. Luis Rafael Rivera Rodríguez, a la dirección luiswichyrivera@hotmail.com, con copia a gjsantiago29@gmail.com con encabezado Christian D. Felipez Alemañy v. Diego Ortiz Rosario | BY2023CV05610.

17. En dicho correo, el Lcdo. Santiago Martínez recordó que previamente se había presentado una oferta transaccional para poner fin a la controversia en el caso BY2023CV05610, y en adición, informó que la criptomoneda XRP había alcanzado un valor que representaba la cantidad de $200,000.00 entregada por su cliente, y que dicha cantidad era la base por la cual el Sr. Christian D. Felipez Alemañy estaba dispuesto a transar la controversia.

18. En el referido correo electrónico del 2 de diciembre de 2024, a las 2:57 p.m., se indicó que la controversia podía

concluirse mediante la entrega de las criptomonedas que el propio Sr. Diego Ortiz Rosario había manifestado y aceptado que pertenecen al Sr. Felipez.

19. En ningún lugar del correo del 2 de diciembre de 2024 se menciona a la Sra. Natalia Felipez Alemañy ni se hace referencia a reclamaciones de terceros.

20. El 2 de diciembre de 2024, a las 3:53 p.m., el Lcdo. Luis Rafael Rivera Rodríguez respondió al Lcdo. Gilberto J. Santiago Martínez, indicando: "Mi cliente, el Sr. Diego Ortiz, me ha autorizado aceptar su demanda de transacción y procederemos a realizar la entrega de las criptomonedas lo antes posible."

21. En dicho correo, el Lcdo. Rivera Rodríguez solicitó la preparación de la estipulación, incluyendo el desistimiento con perjuicio, para la firma de su cliente.

22. Ninguna de las comunicaciones del 2 de diciembre de 2024 menciona a la Sra. Natalia Felipez Alemañy ni hace referencia a reclamaciones de terceros.

23. El 3 de diciembre de 2024, a las 12:09:00 p.m., el Lcdo. Gilberto J. Santiago Martínez envió correo electrónico al Lcdo. Luis Rafael Rivera Rodríguez, bajo el asunto:

24. "Acuerdo Transaccional Christian D. Felipez Alemañy v. Diego Ortiz Rosario | BY2023CV05610", indicando: "Adjunto el Borrador del Acuerdo Transaccional, así como la Moción de Desistimiento con Perjuicio que estaremos presentando oportunamente."

25. En ninguna parte del correo electrónico enviado el 3 de diciembre de 2024 a las 12:09:00 p.m., identificado con el asunto "Acuerdo Transaccional Christian D. Felipez Alemañy v. Diego Ortiz Rosario | BY2023CV05610", ni en sus documentos adjuntos, se menciona a la Sra. Natalia Felipez Alemañy ni se hace referencia a reclamaciones de terceros.

26. El 4 de diciembre de 2024, a las 7:08 a.m., el Lcdo. Gilberto J. Santiago Martínez envió correo electrónico al Lcdo. Luis Rafael Rivera Rodríguez con la información solicitada por su cliente para realizar la transferencia de criptomonedas XRP, proponiendo realizar dos (2) transacciones de prueba de una cantidad mínima y, una vez confirmadas como positivas, proceder con la transferencia final del total restante, e indicando además: "Adjunto versión final del acuerdo con todas las correcciones y cambios sugeridos."

27. El 4 de diciembre de 2024, a las 10:57:11 a.m., desde la dirección electrónica luiswichyrivera@hotmail.com, correspondiente al Lcdo. Luis Rafael Rivera Rodríguez, se remitió correo electrónico al Lcdo. Gilberto J. Santiago Martínez indicando: "Aquí les envío la confirmación de los dos envíos de prueba. Mucho le agradeceré me deje saber si los recibió su cliente para proceder con la transferencia final."

28. Ninguna de las comunicaciones del 4 de diciembre de 2024 relacionadas a las transferencias de prueba de XRP menciona a la Sra. Natalia Felipez Alemañy ni hace referencia a reclamaciones de terceros.

29. El 4 de diciembre de 2024, a las 12:02:41 p.m., desde la dirección electrónica luiswichyrivera@hotmail.com, correspondiente a la oficina legal del Lcdo. Luis Rafael Rivera Rodríguez, se remitió correo electrónico al Lcdo. Gilberto J. Santiago Martínez indicando: "Anejamos la confirmación de la transferencia final.", identificándose

como remitente la paralegal Jazmín Reyes García, de la oficina legal del Lcdo. Rivera.

30. Ninguna de las comunicaciones relacionadas con la transferencia final de criptomonedas XRP menciona a la Sra. Natalia Felipez Alemañy ni hace referencia a reclamaciones de terceros.

31. El 4 de diciembre de 2024, a las 12:24 p.m., el Lcdo. Gilberto J. Santiago Martínez envió correo electrónico al Lcdo. Luis Rafael Rivera Rodríguez, bajo el asunto "Firmado Acuerdo de Transacción", en el cual indicó expresamente: "Acuso recibo de la tercera transacción. Adjunto Acuerdo de Transacción debidamente firmado. En los próximos minutos, estaré radicando la Moción de Desistimiento Conjunta de la cual recibirán notificación."

32. El correo electrónico del 4 de diciembre de 2024 a las 12:24 p.m., identificado con el asunto "Firmado Acuerdo de Transacción", tiene como anejo el documento titulado "FIRMADO Acuerdo de Transacción y Relevo Diego Ortiz Rosario (FIRMADO).pdf."

33. Ninguna parte del referido correo electrónico del 4 de diciembre de 2024 a las 12:24 p.m. ni de su anejo menciona a la Sra. Natalia Felipez Alemañy ni hace referencia a reclamaciones de terceros.

34. El documento titulado "ACUERDO DE TRANSACCIÓN Y RELEVO GENERAL" identifica como únicas partes comparecientes al Sr. Christian D. Felipez Alemañy, como Parte Demandante, y al Sr. Diego Ortiz Rosario, por sí y en representación de DO Solutions, LLC, como Partes Demandadas.

35. El Acuerdo reconoce expresamente que el 7 de octubre de 2023 el Sr. Christian D. Felipez Alemañy presentó una demanda contra Diego Ortiz Rosario y DO Solutions, LLC, bajo el número de caso BY2023CV05610 ante el Tribunal de Primera Instancia, Sala Superior de Bayamón.

36. El Acuerdo establece que es el deseo de las partes poner fin a todas las controversias contenidas en el caso BY2023CV05610.

37. El Acuerdo dispone que el Sr. Christian D. Felipez Alemañy desistirá con perjuicio de la Demanda y de las alegaciones contenidas en ella respecto al Sr. Diego Ortiz Rosario y DO Solutions, LLC, y que estos aceptan dicho desistimiento con perjuicio.

38. El Acuerdo dispone que las partes comparecientes acordaron libre y voluntariamente transigir definitivamente las causas de acción que surgen de los hechos alegados en la Demanda del caso BY2023CV05610 mediante la entrega de SETENTA Y DOS MIL DOSCIENTOS SESENTA (72,260) criptomonedas XRP.

39. El Acuerdo establece que la transferencia de las 72,260 XRP debía realizarse dentro de un plazo no mayor de veinticuatro (24) horas desde la firma del acuerdo.

40. El Acuerdo establece que el desistimiento con perjuicio se realiza conforme a la Regla 39.1 de Procedimiento Civil de Puerto Rico y que el demandante desiste de todas las causas de acción presentadas en el caso.

41. El Acuerdo dispone que lo expresado en el mismo constituye la intención libre, voluntaria e inteligente de las partes y que es ley entre las partes comparecientes.

42. El Acuerdo establece que las partes estipulan que a ninguna se le adeuda cantidad de dinero alguna por concepto de cobro de dinero, incumplimiento de contrato, daños ni cualquier otra razón relacionada a la relación contractual y de negocio que existió entre las partes.

43. El Acuerdo establece que el suscribirlo constituye la disposición y desistimiento final y firme de todas las reclamaciones, alegaciones y defensas contenidas en el caso BY2023CV05610 y que representará cosa juzgada.

44. El Acuerdo establece que contiene el consentimiento total únicamente entre el Sr. Christian D. Felipez Alemañy, el Sr. Diego Ortiz Rosario y DO Solutions, LLC.

45. El Acuerdo de Transacción y Relevo General fue firmado el 4 de diciembre de 2024 por los abogados de las partes, a saber, el Lcdo. Gilberto J. Santiago Martínez, en representación del Sr. Christian D. Felipez Alemañy, y el Lcdo. Luis R. Rivera Rodríguez, en representación del Sr. Diego Ortiz Rosario y DO Solutions, LLC.

46. En ninguna parte del Acuerdo de Transacción y Relevo General se menciona a la Sra. Natalia Felipez Alemañy ni se hace referencia a reclamaciones pertenecientes a terceros.

47. El 4 de diciembre de 2024, las partes del caso BY2023CV05610, Christian D. Felipez Alemañy y Diego Ortiz Rosario, por sí y en representación de DO Solutions, LLC, presentaron ante el Tribunal de Primera Instancia, Sala Superior de Bayamón, una "Moción Conjunta sobre Desistimiento con Perjuicio de Demanda según Acuerdo Privado Transaccional."

48. En dicha Moción Conjunta, las partes informaron al Tribunal que han llegado a un acuerdo privado, por lo que es el deseo del Sr. Christian D. Felipez Alemañy desistir con perjuicio de la Demanda y de las alegaciones contenidas en ella respecto de Diego Ortiz Rosario y DO Solutions, LLC.

49. En la Moción Conjunta, las partes solicitaron expresamente al Tribunal que, a la luz del desistimiento conjunto, se dictara Sentencia de conformidad.

50. El 4 de diciembre de 2024, el Tribunal de Primera Instancia, Sala Superior de Bayamón, Sala 701, examinó la "Moción Solicitando Desistimiento con Perjuicio de Demanda según Acuerdo Privado Transaccional" presentada por las partes del caso BY2023CV05610 y, mediante Sentencia, la declaró CON LUGAR.

51. En dicha Sentencia, emitida el 4 de diciembre de 2024 por la Honorable Jueza Superior Liza M. Báez Burgos, el Tribunal, en atención a la Regla 39.1(a)(2) de las Reglas de Procedimiento Civil, decretó el cierre y archivo del caso BY2023CV05610 CON PERJUICIO, sin especial imposición de costas, gastos ni honorarios de abogado, reconociendo que el desistimiento concedido surge como resultado de un acuerdo privado transaccional entre las partes comparecientes.

52. En su deposición tomada el 11 de diciembre de 2025, Diego Ortiz Rosario admitió que, en la plataforma utilizada para las alegadas inversiones, cada persona tiene su cuenta individual, al contestar afirmativamente a la pregunta: "¿Pero de las personas individualmente?" y "¿Cada persona tiene su cuenta individual?", respondiendo: "Sí, de las personas individualmente" y "Sí. Totalmente individual."

53. En su deposición tomada el 11 de diciembre de 2025, Diego Ortiz Rosario admitió expresamente que Christian D. Felipez Alemañy tenía una cuenta y Natalia Felipez Alemañy tenía otra cuenta, al contestar afirmativamente a la pregunta: "Vamos por esa línea. Christian tenía una cuenta y Natalia tenía otra cuenta, ¿correcto?", respondiendo: "Correcto."

54. En la Vista de Conferencia sobre el Estado de los Procedimientos celebrada el 15 de diciembre de 2025, y luego de escuchar las alegaciones de las representaciones legales, el Honorable Tribunal dispuso que, en cuanto al programa del cual se ha certificado que no se puede extraer la información, se le concedía al licenciado Luis R. Rivera Rodríguez, abogado de Diego Ortiz Rosario, hasta el 15 de enero de 2026 para producir dicha información, la cual hasta ese momento se había informado que no existía, y que, si al 15 de enero de 2026 a las 5:00 p.m. no se producía dicha información, se entendería que la misma no existe.

55. El Sr. Diego Ortiz Rosario admitió bajo juramento que no existe un tracto de las transacciones y que no se puede ver ni acceder a un récord de las transacciones dentro de la plataforma.

56. El Sr. Diego Ortiz Rosario admitió bajo juramento que, respecto a la plataforma utilizada para las alegadas inversiones, no se puede ver lo que ocurrió dentro de la plataforma, y que dicha plataforma ya no existe.

De conformidad con lo anterior, el foro primario resolvió que el acuerdo transaccional firmado entre el señor Ortiz Rosario y Christian Felipez no incluía partida alguna relacionada a la reclamación de Natalia Felipez, por lo que no le asistía la razón a la Parte Apelante. Particularmente, en torno a que, mediante la aludida transacción, se hubiera emitido pago alguno que remediase las reclamaciones instadas por ésta. Además, el foro primario le impuso a la Parte Apelante el pago de tres mil dólares ($3,000.00), en conformidad con la Regla 44.1 de las Reglas de Procedimiento Civil, *infra.*

Inconforme con este proceder, el 28 de abril de 2026, la Parte Apelante recurrió ante este Tribunal de Apelaciones mediante recurso de *Apelación.* En su escrito, presentaron los siguientes señalamientos de error:

**PRIMER ERROR**: Erró el Tribunal de Primera Instancia al dictar sentencia sumaria cuando existían controversias reales y sustanciales sobre hechos materiales como la intención de Diego Ortiz ejecutar el pago de 72,260 XRP; si dicho pago incluía la porción de Natalia (12,039 XRP); si Christian retiene en su poder criptomonedas que pertenecen

a su hermana; si el mismo abogado de ambos hermanos omitió segregar y entregar dichos fondos; y si existió error de hecho al momento del pago. Ninguno de estos hechos es resoluble sumariamente conforme a la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V.

**SEGUNDO ERROR**: Erró el Tribunal de Primera Instancia al concluir que la doctrina de pago de lo indebido es improcedente porque el pago tenía causa jurídica en el Acuerdo de Transacción, ignorando que: (a) la causa jurídica del Acuerdo cubre únicamente la reclamación de Christian por $200,000.00, no la porción adicional de 12,039 XRP entregada por error a nombre de Natalia; y (b) la presunción de error del Art. 1525 del Código Civil opera automáticamente cuando se paga en exceso de lo acordado, como aquí ocurrió.

**TERCER ERROR**: Erró el Tribunal de Primera Instancia al aplicar el principio de relatividad contractual del Art. 1230 del Código Civil para extinguir una reclamación de pago de lo indebido de naturaleza extracontractual, ejercida entre las mismas partes del Acuerdo (Diego Ortiz y Christian), que no pretende crear ni modificar obligación alguna bajo el Acuerdo, sino reclamar la restitución de fondos entregados sin causa jurídica.

**CUARTO ERROR**: Erró el Tribunal de Primera Instancia al imponer $3,000.00 en honorarios de abogado por temeridad contra Diego R. Ortiz Rosario, cuando: (a) la Demanda contra Tercero se fundó en una causa de acción reconocida en el Código Civil y avalada por el Tribunal Supremo; (b) los hechos alegados estaban respaldados por declaraciones bajo juramento, registros de blockchain y documentación del Protocolo de Recuperación; (c) el descubrimiento de prueba estaba incompleto; y (d) la conducta del apelante fue la de un litigante razonable enfrentando una doble exposición económica documentada.

**QUINTO ERROR**: Erró el Tribunal de Primera Instancia al resolver la moción de sentencia sumaria de manera prematura cuando: (a) las deposiciones de Christian y Natalia, pautadas para el 9 de abril de 2026, aún no se habían tomado; (b) el descubrimiento de prueba no concluía hasta el 30 de septiembre de 2026; y (c) las contestaciones a 90 interrogatorios bajo juramento —que constituían contradeclaraciones admisibles bajo la Regla 36.3(c)— no fueron ponderadas, privando al apelante de su derecho constitucional al debido proceso.

El 30 de abril de 2026, esta Curia emitió *Resolución*, en la cual concedió a la Parte Apelada hasta el 28 de mayo de 2026 para radicar su alegato. En cumplimiento, el mismo día que emitimos *Resolución*, el señor Christian Felipez presentó su *Oposición a Apelación*.

Con el beneficio de la comparecencia de las partes, procedemos a exponer la normativa jurídica pertinente a la controversia ante nuestra consideración.

## II.

### A. *Sentencia Sumaria*

La sentencia sumaria es el mecanismo procesal cuyo propósito principal es facilitar la solución justa, rápida y económica de los litigios que no presentan controversias genuinas de hechos materiales y, por lo tanto, no ameritan la celebración de un juicio a fondo. *Soto y otros v. Sky Caterers,* 2025 TSPR 3, pág. 10, 215 DPR___ (2025); Véase, además, *BPPR v. Cable Media,* 2025 TSPR 1, en la pág. 8, 215 DPR___ (2025). La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R.36, permite que, en un litigio, cualquiera de las partes le solicite al tribunal que se dicte sentencia sumaria a su favor, ya sea sobre la totalidad o cualquier parte de la reclamación solicitada. Reglas 36.1 y 36.2 de Procedimiento Civil, *supra.* Las aludidas reglas establecen que, cuando es la parte contra quien se presente una reclamación, esta puede solicitar la sentencia sumaria "**a partir de la fecha en que fue emplazado** pero no más de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba". Regla 36.2 de Procedimiento Civil, *supra* (énfasis suplido).

No obstante, para que una sentencia sumaria proceda, es necesario que de los documentos que la acompañan, surja de manera preponderante la inexistencia de controversia sobre los hechos medulares del caso. *Soto y otros v. Sky Caterers, supra.* Para poder demostrar eficientemente la falta de controversia sobre hechos esenciales, el promovente de la sentencia sumaria debe: (1) exponer las alegaciones de las partes; y (2) desglosar en párrafos debidamente enumerados los hechos sobre los cuáles, a su entender, no hay controversia. Regla 36.3 de Procedimiento Civil, *supra,* R. 36.3.

En *Meléndez González et al. V. M. Cuebas,* 193 DPR 100 (2015), el Tribunal Supremo estableció el estándar específico que

debe utilizar este Foro al revisar denegatorias o concesiones de Mociones de Sentencia Sumaria. A esos efectos, el Tribunal Supremo ha dispuesto que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679 (2018).

Es decir, planteada una revisión de sentencia sumaria, el Tribunal de Apelaciones está en la misma posición que el Tribunal de Primera Instancia para resolver, por lo que debe evaluar las mociones presentadas en el foro primario y cumplir con los requisitos dispuestos en la Regla 36 de Procedimiento Civil, *supra,* al emitir su dictamen. *Meléndez González et al. V. M. Cuebas, supra,* pág. 118. "[L]a revisión del foro apelativo conlleva examinar *de novo* el expediente de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el tribunal de instancia y realizando todas las inferencias permisibles a su favor". *Birriel Colón v. Econo y otros*, 213 DPR 80, 91-92 (2023) citando a *Meléndez González et al. V. M. Cuebas, supra.*

En tal sentido, como parte de nuestra función revisora, es nuestro deber evaluar todos los documentos que obren en el expediente de manera tal que, previo a determinar la procedencia de una solicitud de sentencia sumaria, se deba realizar un balance adecuado entre el derecho de todo litigante a tener su día en corte y la disposición justa, rápida y económica de los litigios civiles. *BPPR v. Cable Media,* supra, pág. 9 (citas omitidas). Cónsono con lo anterior, en el ejercicio de nuestra función revisora, estamos

limitados a: (1) considerar los documentos que se presentaron ante el foro primario; (2) determinar si existe o no controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó correctamente. *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 994 (2024).

Por otra parte, nuestra más Alta Curia ha definido el concepto hecho material de la siguiente forma: un hecho material o esencial es "aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Consejo de Tit. v. Rocca Dev. Corp., et als.,* 2025 TSPR 6, pág. 15, 215 DPR___ (2025). Por ende, la parte promovente tiene el deber de exponer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material. *Soto y otros v. Sky Caterers,* supra, pág. 11.

### B. Interpretación de los Contratos

Las normas que regulan el ejercicio de la interpretación de los negocios jurídicos quedan estatuidas en el Capítulo IX del Código Civil de 2020, 31 LPRA sec. 6341-6346. El artículo 353 establece el principio de conservación, el cual dicta que, en caso de haber duda en cuanto a la eficacia de un negocio jurídico, "debe interpretarse de modo que produzca efectos". 31 LPRA sec. 6341. Por otro lado, al momento de auscultar la intención de las partes al contratar, el Código Civil prescribe unas reglas particulares. El artículo 354 establece que:

En la interpretación del negocio jurídico son de aplicación las siguientes reglas:
(a) se presume que el negocio jurídico se otorga de buena fe; y
(b) si el negocio jurídico es unilateral, se atenderá al sentido literal de sus palabras, a no ser que aparezca claramente que fue otra la voluntad de su autor. En tal caso, se observará lo que parezca más conforme a la intención que tuvo al otorgarlo.
**Si los términos de un negocio jurídico bilateral son claros y no dejan duda sobre la intención de las partes, se estará al sentido literal de sus palabras**.

> Si las palabras parecen contrarias a la intención evidente de las partes, prevalecerá la intención sobre lo expresado.
> Para determinar la intención en ambos casos, **debe atenderse principalmente a la conducta de la parte, sea coetánea, posterior o aún anterior al otorgamiento del negocio jurídico**. 31 LPRA sec. 6342 (énfasis suplido).

El citado texto incorpora la doctrina jurisprudencial, a los fines de establecer que, en ocasiones, el lenguaje de los contratos es insuficiente para fijar la intención de las partes contratantes. *S.L.G. Irizarry v. S.L.G. García*, 155 DPR 713, 726 (2001). Ante este escenario, además de recurrir a la evaluación de la conducta de las partes, nuestro Máximo Foro ha advertido que "es preciso presuponer lealtad, corrección y buena fe en su redacción, e interpretarlo de manera tal que lleve a resultados **conformes a la relación contractual** y que estén de acuerdo con las normas éticas. Dicho en otras palabras, no se puede buscar oscuridad ni tergiversar la interpretación de los contratos para llegar a resultados absurdos o injustos". *Íd.* (Énfasis suplido).

### C. Contrato de Transacción

Un contrato de transacción es un acuerdo mediante el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen fin a uno ya comenzado, con el propósito de evitar los pesares que conllevaría un litigio. *Betancourt González v. Pastrana Santiago*, 200 DPR 169 (2018). El Código Civil lo define como el contrato por el cual, "mediante concesiones recíprocas, las partes ponen fin a un litigio o a su incertidumbre sobre una relación jurídica". 31 LPRA sec. 10641. Este contrato es "consensual, recíproco y oneroso". *US Fire Insurance v. A.E.E.*, 174 DPR 846, 853 (2008).

Es un elemento esencial en este tipo de contrato el que las partes sacrifiquen y concedan al mismo tiempo alguna cosa en función de la superación del litigio sobre la cosa controvertida. *Mun. de San Juan v. Prof. Research*, 171 DPR 219, 240 (2007). Los

sacrificios o las concesiones recíprocas pueden ser de orden económico o moral, no obstante, **no es necesario que sean equivalentes o respondan a valores objetivamente equiparables**. *Íd.* (Énfasis suplido). La formulación de este negocio jurídico requiere: "(1) una situación de controversia jurídica entre las partes y (2) la intención de éstas de eliminarla o superarla mediante concesiones recíprocas". *Blas v. Hospital Guadalupe*, 167 DPR 439, 449 (2006).

El artículo 1499 del Código Civil, *supra*, prescribe que "[e]l contrato de transacción se interpreta restrictivamente". 31 LPRA sec. 10643. Como producto de esta regla general, surge claramente "que la eficacia del contrato de transacción **no puede alcanzar a otros objetos que no surjan expresamente de su contenido**". *Blas v. Hospital Guadalupe, supra*, pág. 450 (énfasis suplido). Adicional a lo estatuido en el artículo 1499, "la interpretación de los contratos de transacción también debe llevarse a cabo de acuerdo con las normas generales sobre la interpretación de contratos, mientras estas últimas no sean incompatibles con lo antes señalado". *Íd.* "Como resultado, han de entenderse como resueltas con carácter final **sólo las cuestiones directamente relacionadas con el objeto transigido**, lo que presupone la necesidad de claridad y precisión en la descripción de los asuntos transados". *US Fire Insurance v. AEE, supra*, pág. 854 (énfasis suplido).

### D. Pago de lo Indebido

Con relación a las obligaciones resultantes del pago de lo indebido, dicta nuestro Código Civil que "[q]uien, **sin causa jurídica, ha hecho el pago de una cosa o cantidad que no debía**, tiene derecho a exigir su restitución de quien lo recibió. La restitución del pago no está sujeta a que se haya efectuado con error". 31 LPRA sec. 10751 (énfasis suplido). El Tribunal Supremo de Puerto Rico ha

identificado tres requisitos que necesitan concurrir para que se pueda concluir que hubo pago de lo indebido. Estos son:

> (1) [Q]ue se produzca un pago con intención de extinguir una obligación; (2) que el pago realizado no tenga una justa causa, es decir, **que no exista obligación jurídica entre el que paga y el que cobra, o si la obligación existe, que sea por una cuantía menor a la pagada**, y (3) que el pago haya sido hecho por error y no por mera liberalidad o por cualquier otro concepto. *Pagán Santiago v. ASR*, 185 DPR 341, 367 (2012) (citas omitidas y énfasis suplido).

Con relación al requisito de que medie error, nuestro Máximo Foro ha esclarecido que cualquier error, sea de hecho o de derecho, genera la obligación de restituir (de mediar las restantes circunstancias). *E.L.A. v. Crespo*, 180 DPR 777, 797 (2011). Por otro lado, el artículo 1525 del Código Civil establece que, de concurrir ciertas circunstancias, el pago realizado se presumirá en error. Particularmente, lee el estatuto que: "[s]e presume que hay error en el pago cuando se entrega una cosa que nunca se debió, se paga en exceso de lo que se debe o cuando se paga una deuda ya satisfecha; pero la persona a quien se pida la devolución puede probar que la entrega se hizo a título de liberalidad o por otra causa justa". 31 LPRA sec. 10756.

### *E. Principio de Relatividad Contractual*

Es norma establecida que los contratos solo surten efectos entre las partes contratantes. *Muñiz-Olivari v. Steifel Labs.*, 174 DPR 813, 822 (2008). A esta regla se le conoce como el principio de relatividad contractual o el principio de la eficacia relativa de los contratos. En virtud del aludido principio, se dice que "[e]l contrato tiene, pues, una eficacia relativa **en cuanto sólo puede generar derechos y obligaciones entre los contratantes**". Puig Brutau, *Fundamentos de Derecho Civil*, Casa Editorial Bosch, Barcelona, 3ra ed., T. II, Vol. 1, 1988, pág. 245 (énfasis suplido). Al respecto, el Tribunal Supremo ha establecido que "que en relación con un tercero un contrato es irrelevante, ya que éste simplemente regula las relaciones entre las partes contratantes y al tercero ni siquiera

le afecta". *Dennis, Metro Invs. v. City Fed. Savs.*, 121 D.P.R. 197, 211 (1988); *Muñiz-Olivari v. Steifel Labs., supra*, pág. 822.

### F. Honorarios de abogado por temeridad

La Regla 44.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1(d), otorga a los tribunales la facultad de imponer honorarios de abogado, en caso de que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad. 32 LPRA Ap. V, R. 44.1(d). Puesto que la determinación de "si ha mediado o no temeridad recae sobre la sana discreción del tribunal sentenciador[,] **solo se intervendrá con ella en casos en que ese foro haya abusado de tal facultad**". *Maderas Tratadas v. Sun Alliance* et al., *supra*, pág. 926 (énfasis suplido).

El concepto de temeridad se ha descrito como uno amplio. *Torres Montalvo v. Gobernador ELA*, 194 DPR 760, 778 (2016). De conformidad con lo anterior, el Tribunal Supremo ha establecido que la temeridad constituye aquel comportamiento que incide en los procesos judiciales y afecta, tanto el buen funcionamiento de los tribunales, como la administración de la justicia. *Íd.* Por tanto, su imposición sirve como una penalidad cuando la parte actúa con "terquedad, obstinación, contumacia e insistencia", particularmente, cuando "en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito". *Íd.*

A modo ilustrativo, nuestro Máximo Foro ha considerado las siguientes circunstancias como temeridad, a saber:

> (1) contestar una demanda y negar responsabilidad total, aunque se acepte posteriormente; (2) defenderse injustificadamente de la acción; (3) creer que la cantidad reclamada es exagerada y que sea esa la única razón que se tiene para oponerse a las peticiones del demandante sin admitir francamente su responsabilidad, pudiendo limitar la controversia a la fijación de la cuantía a ser concedida; (4) arriesgarse a litigar un caso del que se desprendía prima facie su responsabilidad, y (5) negar un hecho que le conste es cierto a quien hace la alegación. *C.O.P.R. v. S.P.U.,* 181 DPR 299, 342 (2011). (Cita omitida).

De manera similar, el Tribunal Supremo de Puerto Rico ha reconocido que existe temeridad cuando una parte: (1) insiste en alegar algo sin alguna prueba fehaciente, (2) niega los hechos que le constan o son de fácil corroboración y (3) dilata los procedimientos judiciales para no responder por sus obligaciones. *Consejo Titulares v. MAPFRE,* 2024 TSPR 140, 215 DPR ___ (2024); *SLG González-Figueroa v. SLG et al,* 209 DPR 138, 149-150 (2022). No obstante, esta no es una lista taxativa, pues la determinación de temeridad descansa en la discreción del tribunal, al considerar los siguientes factores, a saber: (1) el grado de temeridad; (2) el trabajo realizado; (3) la duración y naturaleza del litigio; (4) la cuantía involucrada, y (5) el nivel profesional de los abogados. *Íd.*, págs. 342-343 (citando a R. Hernández Colón, *Derecho Procesal Civil*, San Juan, Ed. LexisNexis, 2010, Sec. 4402).

Ahora bien, la imposición de honorarios de abogado no procede en todos los casos. *PR Fast Ferries et al. v. AAPP,* 213 DPR 103, 115 (2023). Por tanto, su concesión está limitada a la determinación de temeridad o frivolidad por parte del tribunal, según lo establece la Regla 44(d) de Procedimiento Civil, *supra.* Así que, la imposición de honorarios no opera automáticamente, puesto que depende de la determinación discrecional que haga el tribunal en torno a si la parte perdidosa o su abogado actuó con temeridad o frivolidad. *PR Fast Ferries et al. v. AAPP, supra*, pág. 115. En ese sentido, la jurisprudencia vigente establece que no existe temeridad cuando el litigante actúa, a la luz de una apreciación errónea de una cuestión de derecho, y no hay precedentes sobre la cuestión, o cuando existe alguna desavenencia honesta en cuanto a quién favorece el derecho aplicable según los hechos del caso. *Consejo Titulares v. MAPFRE, supra* (citando a *Oliveras, Inc. v. Universal Ins. Co.*, 141 DPR 900, 936 (1996)). Tampoco procede la concesión de honorarios en aquellos litigios que encierran planteamientos

complejos y novedosos aun no resueltos en nuestra jurisdicción. *Meléndez Vega v. El Vocero De PR*, 189 DPR 123, 212 (2013); *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880, 926 (2012).

**III.**

Expuesto el derecho aplicable y examinados los autos *de novo*, determinamos que la solicitud de sentencia sumaria cumplió con los criterios de la Regla 36 de Procedimiento Civil, *supra*. Por otro lado, la oposición presentada por la Parte Apelante no cumplió con dichos requisitos, toda vez que presentó hechos incontrovertidos adicionales sin citar directamente la prueba que la sustentaba. No obstante, procedemos a revisar el recurso, conforme al estándar de revisión desarrollado por la jurisprudencia aplicable.

En el recurso de epígrafe, la Parte Apelante nos solicita que revoquemos la *Sentencia Sumaria Parcial* dictada y notificada por el foro primario el 31 de marzo de 2026, en la cual desestimó la demanda contra tercero presentada por esta parte, y le impuso, a su vez, una sanción ascendente a tres mil dólares ($3,000.00) en concepto de honorarios de abogado. En su primer señalamiento de error, la Parte Apelante esboza que incidió el foro *a quo* al resolver su reclamación contra Christian Felipez de forma sumaria, toda vez que existían hechos materiales en controversia. En particular, la Parte Apelante puntualizó cinco hechos que entendía que no se podían resolver sin celebrarse un juicio. Adelantamos que no le asiste la razón.

En primer lugar, la Parte Apelante arguye que estaba en controversia la intención del señor Ortiz Rosario al momento de ejecutar el pago de criptomonedas a favor de Christian Felipez. Sin embargo, el contrato de transacción firmado entre las partes aclara toda duda en cuanto a este particular. Es norma reiterada en nuestro ordenamiento jurídico que, cuando los términos de un contrato son claros, se interpreta conforme al sentido literal de las

palabras empleadas. Artículo 354 del Código Civil, *supra.* Conforme a lo anterior, no cabe duda de que del *Acuerdo de Transacción y Relevo General* surge la intención del señor Ortiz Rosario al emitir el pago a favor de Christian Felipez.

Conviene repasar el lenguaje del acuerdo entre el señor Ortiz Rosario y Christian Felipez. Lee, en parte, el acuerdo transaccional:

1. El 7 de octubre de 2023, la Demandante [Christian D. Felipez Alemañy] presentó una Demanda por alegado incumplimiento de contrato/cobro de dinero por la vía ordinaria, daños y perjuicios/fraude y dolo contractual, ante el Tribunal de Primera Instancia, Sala Superior de Bayamón, bajo el número de caso BY2023CV05610 (en adelante "Caso Civil").

2. Luego de varios trámites procesales, las partes y sus respectivas representaciones legales han tenido la oportunidad de dialogar sobre sus posiciones en cuanto a las reclamaciones alegadas en sus respectivos escritos y **es el deseo de todos poner fin a todas las controversias contenidas en el caso que hoy nos ocupa**. (Énfasis suplido).

   …

4. Que las partes aquí comparecientes han acordado libre y voluntariamente transigir definitivamente las causas de acción que surgen de los hechos alegados en la Demanda del caso de marras mediante la entrega de **SETENTA Y DOS MIL DOSCIENTOS SESENTA CRIPTOMONEDAS XRP (72,260 XRP)**. (Énfasis en original).

   …

8. Las partes acuerdan la entrega <u>a la parte demandante de 72,260 XRP</u> dentro del plazo anteriormente acordado. Las fluctuaciones de los XRP y/o sus equivalencias a cualquier otra moneda serán responsabilidad de cada parte. (Subrayado nuestro).

9. La parte Demandante ha decidido desistir **CON PERJUICIO** de todas las reclamaciones presentadas en este caso contra las partes demandadas **Sr. Diego Ortiz Rosario y la corporación DO Solutions** LLC; dicho desistimiento **CON PERJUICIO** se realiza a tenor con las disposiciones de la Regla 39.1 de las de Procedimiento Civil de Puerto Rico. Siendo así, la parte demandante desiste **CON PERJUICIO** de su reclamación por todas las causas de acción presentadas y/o cualquier otra reclamación que pudiese haber surgido a raíz de las alegaciones de la Demanda. (Énfasis en original).

10. **Esta transacción se hace con el propósito de evitarse los inconvenientes, molestias, costos y riesgos inherentes a todo tipo de litigio**. La presente transacción no se interpretará como una admisión de responsabilidad, culpa y/o negligencia de la parte demandada en relación a los referidos o alegados hechos en la Demanda. (Énfasis suplido).[1]

    […]

---

[1] Véase SUMAC-TPI, Entrada Núm. 42, Anejo Núm. 12.

Del texto citado se desprende que la intención del señor Ortiz Rosario, al emitir el pago de setenta y dos mil, dos cientos sesenta criptomonedas XRP (72,260 XRP), era exclusivamente poner fin al pleito en su contra. Un examen sosegado del contrato en controversia no permite otra conclusión. Ante unos términos claros, que no dejan duda sobre la intención de los contratantes, esta Curia no está facultada para alterar el acuerdo, ni interpretar sus palabras contrario al sentido literal de estas.

Por ello, cuando el acuerdo dicta que "es el deseo de todos poner fin a todas las controversias contenidas en el caso que hoy nos ocupa" y que "las partes aquí comparecientes han acordado libre y voluntariamente transigir definitivamente las causas de acción que surgen de los hechos alegados en la Demanda del caso de marras mediante la entrega de setenta y dos mil doscientos sesenta criptomonedas XRP (72,260 XRP)", no cabe duda de que la intención en transferir la aludida cantidad de criptomonedas fue transigir el pleito iniciado por Christian Felipez. Por ende, no hay controversia en cuanto a este particular.

En segundo lugar, la Parte Apelante, como parte de su oposición a la solución sumaria del pleito, aduce que existía controversia en cuanto a si el pago emitido a favor de Christian Felipez incluía, a su vez, un pago a favor de Natalia Felipez. La respuesta a dicha interrogante igualmente se halla en el lenguaje claro del *Acuerdo de Transacción y Relevo General.*

Surge del antes citado acuerdo que las únicas partes que firmaron el acuerdo fueron: Christian Felipez y el señor Ortiz Rosario. También se desprende que dicho acuerdo fue el producto de negociaciones de ambas partes, en virtud de una reclamación judicial que instó Christian Felipez en contra del señor Ortiz Rosario. Lee el referido pacto que "las partes aquí comparecientes han acordado libre y voluntariamente transigir definitivamente las

causas de acción que surgen de los hechos alegados en la Demanda del caso de marras mediante la entrega de setenta y dos mil doscientos sesenta criptomonedas XRP (72,260 XRP)". Es decir, la totalidad de la cantidad acordada se destinó para lograr la transacción del pleito. Del lenguaje claro del contrato no surge ninguna disposición que de a entender que, dentro de la cantidad entregada a Christian Felipez, hubiere una porción designada para cualquier otro fin ni hacia otra persona. Por ello, resulta forzoso concluir que no hay controversia sustancial sobre el fin de la cantidad de criptomonedas entregadas a Christian Felipez en virtud del contrato.

Por otro lado, la Parte Apelante identifica tres hechos adicionales los cuales contiende que están en controversia. Estos son los siguientes: (1) si Christian Felipez retiene en su poder criptomonedas pertenecientes a Natalia Felipez; (2) si el abogado de Christian Felipez omitió segregar los fondos recibidos y (3) si existió error al momento del pago.

Sobre el primer hecho mencionado, somos del criterio que el mismo no está en controversia. Del *Acuerdo de Transacción y Relevo General,* no se desprende que el señor Ortiz Rosario hubiera entregado a Christian Felipez criptomonedas que fuesen adeudadas, o pertenecientes a la señora Natalia Felipez. **Al contrario, de una lectura detenida del contrato de transacción, no se aprecia que, dentro de la cantidad a pagarse a Christian Felipez, se encontraban fondos o unidades de criptomonedas que le correspondieran a Natalia Felipez**. Dicha conclusión tampoco surge del intercambio de correos electrónicos que precedieron el acuerdo transaccional.[2] Todo lo contrario, de los correos electrónicos queda meridianamente claro que el acuerdo se dio

---

[2] Véase SUMAC-TPI, Entrada Núm. 42, Anejos 4 al 11.

exclusivamente en atención a la reclamación de Christian Felipez, sin atención alguna a cualquier otra reclamación. Asimismo, de los documentos disponibles se aprecia que el señor Ortiz Rosario se obligó a pagar setenta y dos mil doscientos sesenta criptomonedas XRP (72,260 XRP) con el propósito de poner a fin la demanda que tenía en su contra Christian Felipez y no para satisfacer alguna otra deuda que pudiera tener para con cualquier otro acreedor.

En cuanto al tercer hecho destacado, en cuanto a si medió error al momento del pago, concluimos que el lenguaje del acuerdo no permite cualquier conclusión de que medió error en la entrega de los fondos. El contrato es específico en que la cantidad acordada era de **setenta y dos mil doscientos sesenta criptomonedas XRP (72,260 XRP)**. No hay controversia en cuanto a que esa fue la cantidad que el señor Ortiz Rosario se obligó a pagar como parte del contrato de transacción.

Por último, en cuanto a la alegación de una posible omisión del abogado de Christian Felipez, concluimos que este no es un hecho material. Un hecho material es aquel capaz de afectar el resultado de la reclamación, de acuerdo con el derecho sustantivo aplicable. *Consejo de Tit. v. Rocca Dev. Corp., et als., supra*, pág. 15.

Las alegaciones de la *Demanda contra Tercero* señalaban que, dentro del acuerdo transaccional estaban incluidas las criptomonedas presuntamente adeudadas a Natalia Felipez. Es decir, la controversia giraba en torno al contrato de transacción firmado entre el señor Ortiz Rosario y Christian Felipez. Al ser una controversia de índole contractual, la misma se podía adjudicar sin dirimir las alegaciones en cuanto a la conducta de los representantes legales de Christian Felipez. Por ello, por no alterar el resultado de la reclamación, resulta ser un hecho inmaterial, el cual no impide la resolución sumaria de la causa de acción. Por todo lo anterior, colegimos que no se cometió el primer error.

Resuelto lo anterior, pasamos a resolver el segundo señalamiento de error. En este, la Parte Apelante aduce que incidió el foro *a quo* al determinar que no aplicaba la doctrina de pago de lo indebido. En particular, esta arguye que la causa jurídica del pago era únicamente los dos cientos mil ($200,000) dólares que reclamaba Christian Felipez, lo cual convierte el pago realizado en uno en exceso. Por otro lado, la Parte Apelante razona que operaban las presunciones de error del Artículo 1235 del Código Civil, *supra*. No le asiste la razón.

Conforme al derecho esbozado, para que aplique la doctrina del pago de lo indebido, deben de concurrir: (1) la producción de un pago con la intención de extinguir una obligación; (2) un pago carente de justa causa y (3) que el pago haya realizado por error y no por mera liberalidad o por cualquier otro concepto. Un examen del expediente ante nos revela la ausencia de los criterios necesarios para la aplicación de la aludida doctrina. Particularmente, resolvemos que en este caso medió justa causa para el pago.

Según discutimos en el señalamiento de error previo, en este caso mediaba un *Acuerdo de Transacción y Relevo General*. Mediante dicho acuerdo, el señor Ortiz Rosario se obligó a entregar cierta cantidad en criptomonedas, a cambio de que Christian Felipez desistiera de su demanda con perjuicio contra el señor Ortiz Rosario. Así se desprende del texto del contrato. Contrario a lo alegado por la Parte Apelante, el acuerdo transaccional no se limitaba a una reclamación de dos cientos mil dólares ($200,000.00). Del aludido contrato transaccional se desprende que las partes acordaron "libre y voluntariamente transigir definitivamente las causas de acción que surgen de los hechos alegados en la Demanda". (Subrayado nuestro). Dicha *Demanda* incluía: una causa de acción de incumplimiento contractual y cobro de deuda, una causa de acción de daños y, en adición, una solicitud de imposición de honorarios.

De acuerdo con el derecho aplicable, mediante un contrato de transacción, las partes sacrifican y conceden al mismo tiempo alguna cosa en función de la superación del litigio sobre la cosa controvertida. Es decir, las partes contratantes tienden a comprometer sus respectivas posiciones, en aras de poner a fin el pleito existente. En este caso, el señor Ortiz Rosario acordó pagar setenta y dos mil doscientos sesenta criptomonedas XRP (72,260 XRP), en cambio de que Christian Felipez desistiera de su pleito. Dichas contraprestaciones son componentes esenciales del contrato de transacción. El que una contraprestación supere (o sea inferior) a otra, no invalida de por sí el contrato de transacción. El *Acuerdo de Transacción y Relevo General* constituye justa causa para la emisión del pago. Por ende, es inaplicable la figura del pago de lo indebido.

Por otro lado, tampoco le asiste la razón a la Parte Apelante en que aplicaba la presunción de error dispuesta en el Artículo 1525 del Código Civil, *supra.* El referido artículo establece que "[s]e presume que hay error en el pago cuando se entrega una cosa que nunca se debió, se paga en exceso de lo que se debe o cuando se paga una deuda ya satisfecha". En el caso de marras no hubo entrega de una cosa no adeudada—ciertamente el señor Ortiz Rosario se obligó al pago de las criptomonedas como parte del contrato de transacción.

Tampoco resulta correcto aseverar que hubo un pago en exceso. La cantidad fijada en el *Acuerdo de Transacción y Relevo General* era de setenta y dos mil doscientos sesenta criptomonedas XRP (72,260 XRP). Ese número fue el producto de la negociación de las partes. Al pagar esa cantidad, la Parte Apelante no pagó en exceso, sino al contrario, cumplió con su obligación tal cual pactada. Por ende, no es de aplicación la presunción de que el pago fue

realizado por error. En virtud de lo anterior, concluimos que no se cometió el segundo error.

Como tercer señalamiento de error, arguye la Parte Apelante que falló el foro primario en aplicar el principio de relatividad contractual. No nos persuade tal argumento.

El principio de relatividad contractual dicta que los contratos surten efectos únicamente entre las partes pactantes. La Parte Apelante razona que el mismo resulta inaplicable a las causas de acción que surgen de su demanda contra tercero. No obstante, la alegación central de esta es que, mediante el pago a favor de Christian Felipez, este a su vez satisfizo su deuda con Natalia Felipez. Dicha aseveración es contraria al aludido principio de relatividad contractual. Veamos.

A través del *Acuerdo de Transacción y Relevo General*, se puso a fin el pleito de Christian Felipez contra la Parte Apelante. En el referido acuerdo, se pactó que, para poner fin al caso pendiente, el señor Ortiz Rosario realizaría un pago de setenta y dos mil doscientos sesenta criptomonedas XRP (72,260 XRP). Dicho pago fue realizado sola y exclusivamente con el fin de transigir el pleito entre Christian Felipez y el señor Ortiz Rosario. Nada dispuso el acuerdo transaccional en cuanto a cualquier reclamación que pudiese tener Natalia Felipez, esta no comparece en dicho pleito ni siquiera se menciona en el mismo. Por ende, no cabe argumentar que, mediante el pago de las criptomonedas producto de la transacción, también se hizo entrega de las criptomonedas a las cuales pudiera tener derecho Natalia Felipez. Dicha conclusión no encuentra apoyo en el expediente ni el acuerdo transaccional.

Debido a que el principio de relatividad contractual proscribe que un contrato entre dos partes surta efectos con relación a terceros no involucrados, es forzoso concluir que, en este caso, el contrato de transacción—y su subsiguiente consumación—no surte

efecto alguno sobre la reclamación de Natalia Felipez. Tampoco obliga el aludido contrato a Christian Felipez a pagar de lo que cobró a la señora Felipez Alemañy: el contrato es huérfano de cualquier indicación a esos fines. Por lo antes discutido, somos del criterio que no se cometió el tercer error.

En su cuarto señalamiento de error, la Parte Apelante le imputa al foro *a quo* el haberle impuesto erróneamente una sanción de tres mil dólares en honorarios de abogado por temeridad. No le asiste la razón.

Como cuestión de umbral, cabe destacar que la determinación de imponer honorarios de abogado al palio de la Regla 44.1 de Procedimiento Civil, *supra*, es una discrecional que amerita la discreción de los foros revisores. *Maderas Tratadas v. Sun Alliance* et al., *supra*, pág. 926. Por ello, dichas determinaciones se evalúan desde el crisol de la debida deferencia.

En su *Sentencia Sumaria Parcial*, el foro primario realizó determinaciones específicas para fundamentar la imposición de honorarios. Este inició reseñando los hechos particulares del caso. Enfatizó, entre otros, que "[n]o existe prueba documental alguna que sustente la existencia de una supuesta distribución interna de criptomonedas entre alegados participantes, ni de asignaciones específicas de cantidades, ni de acuerdos de reparto...".[3] Luego de reseñar los contornos fácticos del pleito, el foro primario concluyó que:

> A pesar de ese cuadro fáctico incontrovertido, procedió a radicar una Demanda contra Tercero fabricando una controversia inexistente, forzando la comparecencia de un tercero ajeno al pleito original y obligándolo a incurrir en gastos de representación legal para defenderse de una reclamación que fracasa como cuestión de derecho desde su concepción. Dicha actuación no puede calificarse como un error razonable de interpretación. Se trata de un intento consciente de crear una controversia inexistente, reabrir indirectamente un acuerdo transaccional final y firme, y forzar la litigación innecesaria.[4]

---

[3] Véase SUMAC-TPI, Entrada Núm. 55, pág. 16.
[4] *Íd.*

No apreciamos en el curso de acción del foro *a quo* que este hubiere abusado de su facultad para imponer la referida sanción. Por ello, concluimos que no se cometió el cuarto señalamiento de error.

Por último, como quinto señalamiento de error, alega la Parte Apelante que el foro de instancias actuó de manera prematura al dictar sentencia sumaria, sin que hubiere culminado el descubrimiento de prueba. No coincidimos.

Lee, en parte, la Regla 36.2 de Procedimiento Civil, *supra,* "[u]na parte contra la cual se haya formulado una reclamación podrá presentar, **a partir de la fecha en que fue emplazado** pero no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba...". Regla 36.2, *supra* (énfasis suplido). Se desprende de la citada regla que no hay un límite temporal para resolver un pleito de manera sumaria cuando quien lo solicita es la parte contra quien se entabla una reclamación. Por ello, en esos escenarios, el único impedimento a la resolución sumaria del pleito es la existencia de hechos materiales en controversia.

A esos fines, la Parte Apelante alega, por un lado, que la sentencia fue emitida de forma prematura, en virtud de unas deposiciones calendarizadas de Christian y Natalia Felipez. En particular, aduce que sin estas no se podía determinar si, como parte del acuerdo transaccional, se incluyó un pago correspondiente a Natalia Felipez. No obstante, el lenguaje claro del *Acuerdo de Transacción y Relevo General* nos impide llegar a esta conclusión. Se desprende del acuerdo previamente citado que el pago que realizó el señor Ortiz Rosario fue <u>únicamente a los fines de transigir el pleito instado por Christian Felipez</u>. Por ello, las deposiciones de estos no alterarían la conclusión, ni generarían una controversia genuina en cuanto a la naturaleza del pago.

Por otro lado, la Parte Apelante le imputa al foro *a quo* el no haber ponderado un interrogatorio cursado al señor Ortiz Rosario y las contestaciones sometidas con esta. No basta una mera alegación general para revocar la determinación fundamentada del foro primario a los fines de que no existían hechos materiales en controversia que impedían la resolución sumaria de la causa de acción. Por todo lo anterior, concluimos que no se cometió el quinto error señalado.

**IV.**

Por los fundamentos expuestos, **confirmamos** la *Sentencia Sumaria Parcial* emitida el 31 de marzo de 2026, por el Tribunal de Primera Instancia.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones